OPINION OF THE COURT
C. Raymond Radigan, J.
The issue presented on this motion for partial summary judgment initiated by decedent’s two sons is whether future commissions of a life insurance agent made payable after his death to designated beneficiaries are testamentary substitutes against which his surviving spouse may exercise her statutory right of election (EPTL 5-1.1).
The decedent, an agent of Northwest Mutual Life Insurance Company, died intestate on January 25, 1984, survived by two sons, the respondents, and petitioner, his second wife and the administratrix of his estate. During his life, petitioner elected, pursuant to a plan offered by the company, to have commissions due him after termination of his service to be paid to him or his beneficiary over a 20-year period in level monthly installments. The decedent, who was embroiled in matrimonial litigation with petitioner prior to his death, designated his sons as his beneficiaries under the plan.
According to literature published by the insurance company, the so-called spreadout plan is an optional payment alternative that is designed to level out an agent’s commissions earned on previously written business following termination of his service by reason of death, disability or retirement. It allows the agent to collect future commissions in equal rather than erratic amounts. Essentially, the spreadout plan is simply an optional method of payment of future commissions that were previously earned.
Under the plan, first-year and renewal commissions on policies written by the agent are retained by the company in an interest-bearing account that is not segregated from the company’s general assets. Payouts are made in level monthly installments to the agent upon termination of his service or, in the event of his death, to his designated beneficiary. Although the agent possesses no interest in the account in which the commissions are deposited, the amount credited to the account is carried as an indebtedness of the company on its books.
Respondents characterize the spreadout as the equivalent of a deferred compensation plan which has been held in Estate of *187 Hildebrand (NYLJ, May 6, 1983, p 18, cols 1, 2) not to constitute a testamentary substitute. Petitioner, citing Matter of Riefberg (58 NY2d 134), contends the disposition made of the commissions is analogous to a revocable trust in which the decedent retains only a life estate and, hence, is an ineffective device to defeat the rights of the surviving spouse. The statutory policy underlying the right of election is remedial and should be construed liberally in the interest of the surviving spouse to give him or her the broadest possible protection (Matter of Agioritis, 40 NY2d 646; Matter of Bartley, 83 Misc 2d 672, 678).
The statute contains five categories of inter vivos dispositions which it treats as testamentary substitutes (EPTL 5-1.1 [b] [1] [A]-[E]) and also lists various transfers which it expressly exempts from classification as testamentary substitutes (EPTL 5-1.1 [b] [2]). The test to be applied when the disposition does not snugly fit in 1 of the first 4 categories of testamentary substitutes is to determine if it falls within the broad definition of the fifth category of clause (E) (Matter of Riefberg, 58 NY2d 134, supra) which reads as follows: "Any disposition of property made by the decedent * * * in trust or otherwise, to the extent that the decedent at the date of his death retained, either alone or in conjunction with another person, by the express provisions of the disposing instrument, a power to revoke such disposition or a power to consume, invade or dispose of the principal thereof.”
In making a determination of this issue, it is significant to note whether the statute excludes the disposition under consideration from its purview (Matter of Riefberg, supra). The Court of Appeals in Riefberg pointed out that the Bennett Commission had advocated an exclusionary clause exempting from treatment as testamentary substitutes enumerated transfers. The report includes in its list of exempt items deferred compensation plans (Matter of Riefberg, supra, at p 140; see, 4th Report of Temporary Commn on Modernization, Revision and Simplification of the Law of Estates, NY Legis Doc, 1965, No. 19, at 148).
However, the statute, as enacted, makes no mention of deferred compensation, excluding only "(A) payment in money, securities or other property under a thrift, savings, pension, retirement, death benefit, stock bonus or profit-sharing plan, system or trust” (EPTL 5-1.1 [b] [2] [A]).
The failure to exclude deferred compensation plans cannot *188 be deemed a matter of happenstance. Its inclusion in an early version of the proposed statute and its later omission in the legislation that was enacted into law must be deemed deliberate. That being so, the Legislature left deferred compensation plans subject to attack by a surviving spouse as a testamentary substitute provided the particular plan fits into the definition of "[a]ny disposition of property * * * in trust or otherwise, to the extent that the decedent at the date of his death retained, either alone or in conjunction with another person, a power to revoke such disposition or a power to consume, invade or dispose of the principal thereof.” (EPTL 5-1.1 [b] [1] [E].)
The decedent here not only retained the power to change his beneficiaries at any time, but also the power, during his lifetime, to consume the principal as payments were made. The spreadout plan must, accordingly, be found to fall squarely within the statutory definition of a testamentary substitute as set forth in clause (E) (EPTL 5-1.1 [b] [1] [E]). It also merits mention that the rights of beneficiaries of pension, retirement, death benefit, stock bonus, profit-sharing plans, systems or trusts, and of annuities and insurance contracts cannot be impaired or defeated by a surviving spouse’s right of election by reason of EPTL 13-3.2. However, the rights of a beneficiary of a deferred compensation plan that does not qualify as a death benefit are not afforded similar statutory protection.
Unlike the holding in Hildebrand (supra), the disposition under consideration was not intended as a death benefit. It merely is a system for the payment of commissions over a period of time unrelated to the company’s pension and retirement plans.
The court, accordingly, denies respondent’s motion insofar as it seeks a declaration that the spreadout plan is exempt from classification as a testamentary substitute. Furthermore, insofar as the making of the motion for summary judgment invites the court to search the record and to grant summary relief to any party entitled thereto (CPLR 3212 [b]), the court finds that the plan is a testamentary substitute subject to petitioner’s right of election as set forth in her notice and severs that claim from the others set forth in the notice of election filed by petitioner.
Respondent’s motion additionally requested a declaration that six other assets made payable to designated beneficiaries *189 were not subject to petitioner’s right of election. Four of these assets were the proceeds of life insurance policies, and the other two were part of the company’s pension and retirement plans. The papers filed in opposition to the motion presented no defense and voiced no objection to the respondent’s assertion that these dispositions were statutorily exempted (EPTL 5-1.1 [b] [2]) from classification as testamentary substitutes, and the court so finds. Therefore, the court awards respondents partial summary judgment declaring these six dispositions are not testamentary substitutes and to the extent that the notice of election filed by petitioner pleads otherwise, such allegations are stricken and the claims dismissed.